## EASEMENTS IN STREETS AND PUBLIC GROUNDS.

[Circuit Court of Cuyahoga County.]

BERNHARD KUHN v. THE CITY OF CLEVELAND.

Decided, July 27, 1903.

*Statute of Limitations—Laches of an Abutting Property Owner—A Municipality Trustee of its Streets and Public Grounds for All the People—Whether an Abutter Sued for the Benefit of Himself or the Public Determined, How.*

1. The individual rights of an abutter upon a street or public grounds in a municipal corporation, to have the same kept open and free from obstruction to his light, and ingress and egress to his property, may be barred by the lapse of time.
2. Whether an abutter brings suit for his own benefit alone, or in behalf of the public, will be determined from the allegations of his petition.

WINCH, J.; MARVIN, J., and LAUBIE, J., concur.

Heard on appeal.

It appears from the pleadings and the agreed statement of facts in this case that in 1837 a large tract of land, which was then in Ohio City, was platted and subdivided into what is known as the Willeyville Allottment, a map of which is recorded in Vol. 2 of Maps, page 16, of Cuyahoga county records.

By the intersection of Lorain, Abbey and Brainard (now Gehring) streets, as shown on this plat, a triangle is formed and the triangular space at the center of the intersection of these streets, and not within the designated width of said streets were the side lines thereof produced through this space, contains about one-eighth of an acre. No lines are drawn through this space; the only boundaries shown on the map are the outside lines of the three streets named. There are no monuments shown defining the corners of this inner triangle.

The certificate attached to the plat reads as follows:

"The name, bearing and width in feet of each street is entered within its respective lines. The width of each alley is entered

with figures and within its respective line representing its width
in feet and inches. The number of each lot is entered with red
figures in the center of its respective lot, and the length of each
lot-line is entered with black figures upon its respective line rep-
resenting its length in feet and inches. *As to the public ground
more than what is contained in the streets will be seen by inspec-
tion of the plat."*

There are eight or nine other triangular spaces at the intersec-
tions of streets and alleys similar to the one described; no other
spaces not contained in streets, alleys or lots appear on the plat
and there are no premises marked "public ground."

In 1848, pursuant to legislation of the council of Ohio City,
a building was erected upon the triangular piece of ground in
controversy and used with the necessary fire-extinguishing appa-
ratus as appurtenant to the fire department of Ohio City. The
council of said Ohio City again, in 1851, authorized the construc-
tion of an engine house on said land and the organization and
maintenance of a fire company therein. The building was erected,
equipped and maintained as a part of the fire department of Ohio
City until its annexation to the city of Cleveland in 1854. Since
said annexation the city of Cleveland has maintained a fire engine
house there. In 1858 a brick engine house was built upon said
site and in 1869 and again in 1872, the city of Cleveland made
additions thereto.

It is admitted that from 1848 down to the present time, Ohio
City and its successor, the city of Cleveland, have been in the
continuous, exclusive and notorious occupancy of said triangular
piece of ground, maintaining thereon a fire-engine house with the
necessary equipment, as part of the city fire department.

The city is about to make extensive alterations in said engine
house which amount practically to a re-building thereof.

The plaintiff is the owner of a large brick apartment dwelling
and business block situated on Abbey street, diagonally opposite
from the engine house and he has filed his petition, claiming that
the land upon which the engine house is situated is part of the
highway and is public ground; that the engine house is an ob-
struction thereto and, therefore, a nuisance, and praying:

"That a temporary restraining order may be allowed by this
court restraining defendant from proceeding to contract and ex-

pend money for any alteration of and rebuilding of said building on said highway and public ground, and that on the final hearing of this case an order and decree may issue requiring said defendant to abstain from the further obstruction of said highway and public ground, and from the further maintenance upon the same of the said building, and from the use of the same, and that the defendant be further ordered and directed to abate the nuisance thereby occasioned, and to remove from said highway and public ground said building and all obstructions in and about the same or used in connection therewith, and to restore such portion of said highway and public ground so occupied by said building to such condition as will enable said highway and public ground so occupied by said building to be used by this plaintiff and by the public generally as and for highway and public ground, and for such further relief as equity may require."

The city, as one of its defenses, pleads the lapse of time; for over fifty years the general public has acquiesced in its use of this triangular piece of land, and plaintiff himself has acquiesced for at least twenty-five years.

Plaintiff, however, urges that lapse of time will not bar the public; that the city by the dedication contained in the plat and acceptance thereof became a trustee of said land under a subsisting and continuing trust for the uses and purposes for which said lands were dedicated. That the city is trustee for all the people of the state and time never runs against the state.

In this view of the case it is material to examine the petition and determine whether plaintiff has brought suit for his own benefit alone or in behalf of the public. *Williams* v. *Presbyterian Society of Cincinnati,* 1 O. S., 478, 508, 510.

It is true that plaintiff alleges that he requested the city director of law to bring this action and that he refused to do so. But the plaintiff does not allege that upon such refusal he instituted this suit in his own name, *on behalf of the corporation,* as provided in Section 1778, R. S. O.

This court in the market house case (*Herrick* v. *City of Cleveland,* 7 C. C., 470) held that compliance with Sections 1777 and 1778 of the statutes was necessary only when the plaintiff brought his action in behalf of the public generally, and that one who has been damaged in his own property rights by a failure of the city

to perform its legal duty or to carry out a trust as to streets, may sue the city to enjoin such continuing injury to him, and to enforce such trust, without first requesting the city solicitor to bring the action, providing the injury to him is different from that done to the public generally. So it seems that the nature of the injuries complained of, whether they affect the plaintiff peculiarly, or the public generally, determine the character of the action.

What are the allegations of the petition in this respect?

First we notice an absence of any allegation that the plaintiff institutes suit in his own name on behalf of the corporation and we find no allegation that plaintiff brings his action in behalf of the public. He does say, however, that "he is and for twenty-five years has been the owner in fee simple of land adjacent to and abutting upon said highway and public ground, which said land of plaintiff is occupied by him with a large brick apartment dwelling and business block, the value and use of which and of *his said land* are greatly and especially enhanced by reason of their abutting upon said highway and public ground, thereby rendering access to, egress and outlook from, and the use of *plaintiff's* said premises more commodious, better and more advantageous; and such public ground and highway, by reason of the fact that by law it is to be, and plaintiff is entitled to have it forever, open and free from buildings, obstructions and all permanent occupancy, *is therefore useful and beneficial to plaintiff and his said land and improvements far exceeding its usefulness and benefit to the public generally* and for the same reason the possession and occupancy thereof by defendant hereinafter set forth *is especially, peculiarly, and irreparably injurious to plaintiff and his rights and interests far beyond the injury caused to the public generally.*"

Describing the engine house plaintiff says: "The said obstruction and occupancy interferes with the uses of and constantly *diminishes the natural value of plaintiff's said property as aforesaid.*"

Denominating the engine house a public nuisance the plaintiff continues: "except for the relief herein prayed for, *this plaintiff, suffering constant and daily injury to his said property,* wholly irreparable at law, is and would be without remedy unless restrained by this court."

Enough has been quoted from the petition to show that plaintiff has not sued in behalf of the public, but only for redress of injuries to his private property. The statute runs against him.

"The right to a public easement may be lost by an adverse possession, just as a private right may be. We do not, of course, speak of easements belonging to the state." *Williams* v. *The First Presbyterian Society,* 1 O. S., 478, 510; *Cincinnati* v. *The First Presbyterian Society,* 8 Ohio, 298; *Cincinnati* v. *Evans,* 5 O. S., 594.

If the statute of limitations runs in favor of the private rights of an individual against the city, we do not see why it does not run in favor of the city against the private rights of an individual. Such is the case here. We are asked to protect private rights and not the rights of the public, and we hold that by the laches of the plaintiff he is barred.

This view of the case makes it unnecessary to determine the meaning of the dedicatory language used on the plat and whether the engine house site was intended to be dedicated as part of the public highway or as public grounds; and if the latter, whether the use of it for fire department purposes is lawful. A careful and exhaustive opinion on this branch of the case was delivered by the learned judge who tried this case in the court below. We concur in his conclusions, but prefer to determine the case upon the grounds stated.

*Riley & McQuigg,* for plaintiff.

*Director of Law,* for defendant.